IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CLARENCE WATERS, AIS # 132116, )
                                   )

                                   )

       Petitioner,               )

                                   )

VS.                                )         CIVIL ACTION NO.

                                   )        2:06-CV-650-MEF

                                   )

KENNETH JONES, et al.,        )

                                   )

       Respondents.           )

**THIRD SUPPLEMENTAL ANSWER**

I.

**Facts and Proceedings in State Courts** (continued)

1.1  On or about March 24, 2005, Clarence Waters ("Waters")  entered a guilty plea to a charge of stalking in Montgomery County Circuit Court.  [See **Respondents's Exhibit 8**[1]]

2.01  Pursuant to the plea, Waters was sentenced to serve a thirty-year term of imprisonment.  [See **Respondents's Exhibit 9**]

2.02  On June 16, 2005, Waters made what amounted to an oral motion to withdraw his guilty plea, stating, as grounds, the following --

---

[1] **Respondents's Exhibit 8** is in the process of being transcribed, and will be submitted under separate cover.

that, because his trial counsel had falsely led him to
believe that he would receive a split sentence if he entered
a guilty plea, his guilty plea was involuntary.

[See **Respondents's Exhibit 10**]  A hearing was held on July 17, 2005, at the

conclusion of which Waters's motion was denied.  [See **Respondents's Exhibit 11**]

Waters took no direct appeal.  *See* Petitioner Waters's *Habeas Corpus Petition*, at p. 3.

III.

### Respondents' defenses (continued)

5.3 Respondents deny that Waters's sentence is illegal because the State's

proof of his (Waters's) prior felony convictions was inadequate.  Waters admitted

two prior felony convictions at the time of sentencing -- one for first degree rape,

and one for second-degree escape.  [See **Respondents's Exhibits 8, 9, and 10**]

6.21. Respondents continue to deny that Waters has exhausted in state court

his claim relating to the legality of his sentence with respect to the *State's proof of*

*his prior felony convictions*.  Furthermore, it became futile for Waters to attempt to

complain about his sentence on this ground once the 30-day time limit for filing a

motion to withdraw his guilt plea had lapsed.  *See* Rule 24.1(b) of the Alabama

Rules of Criminal Procedure.  Because of this, it would also be futile for Waters to

seek further state court relief on this claim because, for state court purposes, the

claim is procedurally defaulted.  Because the claim is procedurally defaulted in state

court, Waters is prohibited from raising it now in federal habeas corpus without a

2

showing of "cause and prejudice" for his having failed to properly pursue the issue in state court. See Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).

6.22. Respondents admit that Waters raised in the state trial court the claim that his guilty plea was involuntary because it was *coerced by misinformation provided by his trial counsel.* Because he failed to take a direct appeal, however, Respondents deny that Waters has, for the purposes of its being raised here in federal habeas corpus, exhausted the claim in state court. Furthermore, it would be futile now for Waters to attempt now to exhaust this claim in state court because of, among other reasons, the fact that the 42-day time for the taking of a direct appeal has lapsed. *See* Rule 4(b)(1) of the Alabama Rules of Appellate Procedure. Because it would be futile for Waters to seek further state court relief on this claim, for state court purposes the claim is procedurally defaulted. Because the claim is procedurally defaulted in state court, Waters is prohibited from raising it now in federal habeas corpus without a showing of "cause and prejudice" for her having failed to properly pursue the issues in state court. See Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).

V.

**Exhibits** (continued)

17. The following exhibits are, or will be, filed herewith:

Exhibit 8      the guilty plea hearing held on March 25, 2005 in State v. Waters, CC 05-0275 (Montgomery County Circuit Court);

Exhibit 9      the sentencing hearing held on May 12, 2005 in State v. Waters, CC 05-0275 (Montgomery County Circuit Court);

Exhibit 10      the hearing held on June 16, 2005 in State v. Waters, CC 05-0275 (Montgomery County Circuit Court);

Exhibit 11      the motion to withdraw guilty plea hearing held on July 14, 2005 in State v. Waters, CC 05-0275 (Montgomery County Circuit Court).

WHEREFORE, PREMISES CONSIDERED, this Court should deny the petition and the relief requested herein by Waters.

Respectfully submitted,

TROY KING (KIN047)
*Attorney General*
By:

/s/ Stephen N. Dodd
STEPHEN N. DODD
*Assistant Attorney General*
ID #ASB-6492 D65-S

4

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2008, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, and I hereby

certify that I have mailed by United States Postal Service the document to the

following non-CM/ECF participants:   Clarence Waters, AIS #132116, Donaldson

Correctional Facility, 100 Warrior Lane, Bessemer, AL  35023-7299.

**s/ Stephen N. Dodd**
STEPHEN N. DODD (ASB-6492-D65-S)
*Assistant Attorney General*
Attorney for Respondents
Alabama Attorney General's Office
11 South Union Street
Montgomery, AL  36130
Telephone:  334-242-7378
Fax:          334-242-2848
E-mail:      sdodd@ago.state.al.us

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, AL  36130
(334) 242-7300

389804/98801-001

1

```
 1              IN THE FIFTEENTH JUDICIAL CIRCUIT
                IN AND FOR MONTGOMERY COUNTY
 2                   MONTGOMERY, ALABAMA

 3
        STATE OF ALABAMA,
 4
                    PLAINTIFF,
 5
        vs.                        CRIMINAL ACTION
 6                                 CASE NO. CC-05-275

 7      CLARENCE WATERS,

 8              DEFENDANT.

 9
        _____/
10

11          COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS
                      MAY 12, 2005
12
                 MONTGOMERY COUNTY COURTHOUSE
13                     COURTROOM 3-B

14
        BEFORE:  THE HONORABLE TRACY S. McCOOEY
15               CIRCUIT JUDGE

16
                      APPEARANCES
17
        ON BEHALF OF THE STATE:
18      MATTHEW SHADDRIX, ESQUIRE
        DEPUTY DISTRICT ATTORNEY
19      FIFTEENTH JUDICIAL CIRCUIT
        MONTGOMERY, ALABAMA
20
        ON BEHALF OF THE DEFENDANT:
21      RAYMOND JOHNSON, ESQUIRE
        MONTGOMERY, ALABAMA
22

23

24

25
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365


STATE'S EXHIBIT 9

2

```
 1                       PROCEEDINGS
 2            THE COURT:  Okay.  I've got we're here to
 3       sentence Mr. Waters this morning on a stalking.
 4       Is that correct, Mr. Johnson?
 5            MR. JOHNSON:  That's correct, Your Honor.
 6            THE COURT:  Okay.  Mr. Shaddrix, did you
 7       want to invoke any priors?
 8            MR. SHADDRIX:  Yes, Your Honor.  The State
 9       moves to invoke two prior felonies.
10            THE COURT:  Are y'all stipulating to those,
11       Mr. Johnson?
12            MR. JOHNSON:  We do, Your Honor.
13            THE COURT:  Okay.  All right.  Does Mr.
14       Waters wish to have a formal sentencing hearing?
15            MR. JOHNSON:  I have some letters and I have
16       some of his character witnesses to present.
17            THE COURT:  Okay.
18            MR. JOHNSON:  They just wish to address the
19       Court.
20            THE COURT:  All right.  Go ahead.
21            MR. JOHNSON:  Okay.  Your Honor, first of
22       all, I have a number of letters here.  The first
23       thing I would submit to the Court, though, is
24       that Mr. Waters on his own went into a drug rehab
25       program.  He had a problem with cocaine.  I think
```

3

1         he's suffered with that problem most of his life.

2             He completed a program in Greenville.  I

3    have the certificate here from the South Alabama

4    Mental Health Authority.  Since then, he's been

5    going to, I think, NA or AA meetings --

6         THE DEFENDANT:  NA and AA.

7         MR. JOHNSON:  -- meetings since he's been

8    released on bond on this case.  He is working.

9    He has a really good work record, some good

10   letters of commendation from people he works

11   with.  And I will submit these letters to the

12   Court.

13        THE COURT:  Thank you.

14        MR. JOHNSON:  One thing I do wish to

15   correct, I think the presentence report says a

16   minimum of 15 years.  I think it's a minimum of

17   10 years.  Is that correct, Mr. Shaddrix?

18        MR. SHADDRIX:  I'm sorry?

19        MR. JOHNSON:  It's a minimum of ten years?

20        THE COURT:  It is a minimum of ten with two

21   priors.

22        MR. SHADDRIX:  It is, Your Honor.  But I

23   actually need to amend my motion to invoke the

24   Habitual Offender Act to include three or more

25   prior felonies.

4

```
 1              MR. JOHNSON:  Do you have those certifieds?
 2     I know about two of his charges.
 3              THE COURT:  Mr. Shaddrix, do you have the
 4     certifieds on those?
 5              MR. SHADDRIX:  I have the certifieds on
 6     the --
 7              THE COURT:  Show what you've got to
 8     Mr. Johnson because he's agreeing to two, but I
 9     don't think he's agreeing to three.
10              MR. SHADDRIX:  No, Your Honor, I do not have
11     the certified on the third one.
12              THE COURT:  Okay.  Well, we've got two,
13     which would be ten to life.
14              Okay.  Mr. Johnson, did you have anyone
15     on your side that wishes to address the Court?
16              MR. JOHNSON:  Yes, Your Honor.  I would call
17     his mother here, please.
18              MS. CARTER:  Okay.  I'm Mr. Waters' mother.
19              MR. JOHNSON:  State your name, please.
20              MS. CARTER:  Laura Carter.
21              THE COURT:  Okay?  Ms. Carter?
22              MS. CARTER:  Uh-huh.  And he lives with me,
23     and he works every day.  He's had a problem, but,
24     you know, in the past years, but he's done real
25     good.  I got him off into church, and I'm a real
```

5

```
1          church-going mother, and he lives with me.  So he
2          has to walk in the path of righteousness in my
3          house.  You know?
4               THE COURT:  Yes, ma'am.
5               MS. CARTER:  And so he's doing real well,
6          I've got to say.
7               THE COURT:  Okay.  All right.  Thank you,
8          Ms. Carter.
9               MR. JOHNSON:  Also, we have his daughter
10         here.
11              MS. BOYD:  Yes.  My name is Alicia Boyd, and
12         my father has been a good father to me.  He's had
13         a home for me.  He'd always give me something
14         that I needed.  If he don't have it, he tries to
15         get it for me.  And he -- he's been a good father
16         to me.
17              THE COURT:  Okay.  Thank you, ma'am.
18              MR. JOHNSON:  His sister.
19              MS. MOORE:  My name is Debra Moore, and I
20         live right next to my mom and Clarence.  And I'm
21         working with him, like we go to church and stuff
22         and go to singings and stuff at night trying to,
23         you know, keep him out of the streets and stuff.
24         And he's been doing real well so far.  He goes to
25         work every day.  He don't have a problem.  He
```

6

1        comes home right after work.

2            THE COURT:  All right.  Thank you, ma'am.  I

3        appreciate that.

4                Do you want to say anything, Mr. Waters?

5            THE DEFENDANT:  Yes, ma'am.  I'd just like

6        to say that I apologize for what happened.  I'm

7        doing everything that I can to do the right

8        thing.

9            THE COURT:  Mr. Waters, this is a horrible

10       thing that you did.  Okay?  I mean, it's really

11       -- I mean, it's inexcusable.  I mean, that is,

12       you know, the worst behavior.  I mean, you know,

13       that is not -- you know, Ms. Noland, I'm sure, is

14       probably having nightmares about this.  I mean,

15       that is a horrible thing.

16               And I've got news for you.  You know,

17       yes, you've got a nice mama and daughter and

18       sister.  I mean, they seem like very nice people.

19       But the problem is, Mr. Waters, you're not a nice

20       person.  I mean, your record, sir, is horrible.

21       Okay?  I mean, when I see a rape first and an

22       armed robbery, you're not a nice person, sir.  I

23       mean, you're really not.

24               You've got a nice daughter and a nice

25       sister and a nice mama, and I know your mama did

7

1          the best she could with you.  But, you know,

2          you've got those two very serious felonies on

3          your record.  And you got paroled back in 1990,

4          which you should have been someone who was doing

5          nothing wrong.  Knowing that you've got these two

6          serious convictions on your record and you go out

7          and do something like this?

8               THE DEFENDANT:  Your Honor, let me --

9               THE COURT:  I mean, this is inexcusable.

10         There is no excuse for this, period.

11              THE DEFENDANT:  I understand, Your Honor.

12         During --

13              THE COURT:  I don't think you do understand.

14         I mean, I don't think you do get it.  Do you

15         realize how frightened that that lady was?  There

16         is no excuse for that, absolutely none, zero.

17              I mean, I don't know what you were

18         thinking or what your problem is.  And I've got

19         news for you.  Drugs, drugs don't make people go

20         out and rape somebody and stalk somebody.  Yes,

21         drugs might make you go out and steal things or

22         do -- it might even make you go out and rob

23         somebody, but it certainly doesn't make you do

24         something like this.  So that is not an excuse.

25              THE DEFENDANT:  That past conviction, the

Vicki H. Clark
Official Court Reporter
(334) 832-1365

8

```
 1        past conviction for the sexual assault, it was a
 2        girlfriend of mine and --
 3             THE COURT:  I don't care.  I don't care.  It
 4        is what it is.
 5             MR. JOHNSON:  Judge, we're not trying to
 6        make any excuses for his behavior.
 7             THE COURT:  No, there is none.
 8             MR. JOHNSON:  His behavior was wrong.  He
 9        knows it was wrong.
10             THE COURT:  I mean, Raymond, he's going off.
11        Okay?  I mean, he is going off.  He is not
12        someone who needs to be on probation.  I mean, I
13        am very happy with these letters.  Like I said,
14        he's got a nice family.  They're nice people.
15        But he isn't someone who needs to be out here
16        with the rest of us.
17             MR. JOHNSON:  I understand that.  Judge, I
18        do --
19             THE COURT:  He just doesn't.
20             MR. JOHNSON:  -- want you to take into
21        account that he does realize what he did was
22        wrong, he has taken steps to try to improve his
23        life since this happened.
24             THE COURT:  I mean, I realize that.  But,
25        you know, that's all after the fact.  I mean,
```

9

```
 1          this is like really, really bad judgment,

 2          horrible judgment.

 3              MR. JOHNSON:  I understand that.  The only

 4          thing he can do after he's done that is just try

 5          to do what he can to improve himself and try to

 6          make sure it doesn't happen again.

 7              THE COURT:  Well, the only thing I can do to

 8          make sure it doesn't happen again is that he's

 9          not out here with the rest of us where it can

10          happen again.

11              I mean, I'm sorry, Mr. Waters.  But

12          you're not someone who needs to be out here with

13          the rest of us.  You're just really not.  You

14          know, there's a lot of people I can work with.

15          Like I said, I can work with people that steal

16          and people that do drugs.  I mean, I work with

17          all kinds of people.  But things like this,

18          there's just something not right.  And I can't

19          fix it.  Okay.  All the things in the world that

20          I can do as a judge are not going to fix somebody

21          who does something like this.  Because there's

22          just something not right about that.

23              THE DEFENDANT:  Your Honor, 25 years -- over

24          25 years ago.  Over 25 years ago, a situation

25          occurred, and it was a situation that necessarily
```

10

```
 1          shouldn't have gone through the system.  They
 2          offered me a three-year plea bargain to not let
 3          this go to court, and then the person that made
 4          the allegation was the one that wrote letters to
 5          the Parole Board.
 6              THE COURT:  Mr. Waters, I don't even care
 7          about 25 years ago.  What I care about is
 8          what happened here and now and what you did to
 9          Ms. Noland.  That's what I'm worried about is the
10          here and now and what happened.
11              THE DEFENDANT:  Your Honor, the drugs --
12              THE COURT:  And there's no excuse for it.
13          And drugs don't make you do something like that.
14          I've got news for you.  They don't.  Okay?  They
15          don't make you do something like that.  And don't
16          tell me about drugs.  Okay?  Because I know all
17          about them.  I used to be a drug cop.  I'm the
18          drug court judge.  So you can't tell me nothing
19          about drugs, my friend.  Okay?  Just don't even
20          go there with me.  Drugs don't make you act like
21          this.  That is very serious.
22              THE DEFENDANT:  I'm so sorry, Your Honor.
23              THE COURT:  Yes, you ought to be.  It's
24          horrible.  I see Ms. Noland standing there.
25                  I mean, am I wrong, Ms. Noland, that
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

11

```
 1          this frightened you beyond frightening you?
 2               MS. NOLAND:  Yes, it definitely did.  Me and
 3          my family, we left our home because we were
 4          afraid for our lives.
 5               THE COURT:  Right.
 6               MS. NOLAND:  Because he -- he --
 7               THE COURT:  And I'm sure you still have
 8          nightmares.
 9               MS. NOLAND:  Yes.  Yes.  He has specifically
10          threatened that he would kill my family.
11               THE COURT:  There's no excuse.  And I'm
12          sorry this happened, Ms. Noland, but I just want
13          you to know most people, thank God, do not act
14          like this.  They don't.  I mean, I don't want you
15          to have nightmares and be scared forever because
16          -- don't -- don't let him do that to you.  Most
17          people are not like this.  But the ones that are,
18          we have a place for them to go, which is where
19          he's going.
20               Did you want to say anything else,
21          Ms. Noland?
22               MS. NOLAND:  Just that I hope he gets locked
23          up for a long time.  And I'm a religious person,
24          too, and I know that God deals with everybody in
25          his own way.
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

12

1              THE COURT:  Well, again, I'm sorry that

2       happened to you.  There is absolutely no excuse

3       for it.

4              MS. CARTER:  Judge, I promise you, he won't

5       ever come back this way.

6              THE COURT:  No, ma'am.  I know you're a good

7       mama.  You did the best job you could raising

8       him.  But, you know, the thing is, when your kids

9       get to be adults, they make their own choices.

10      Then they're on their own.  All we can do is

11      raise them, try to make them have good morals and

12      make good choices.  But then they do it on their

13      own.  Okay?  He's an adult, and he made this

14      choice, and he's going to pay the consequences

15      for it.

16              And I'll be honest with you.  The

17      probation officer's recommendation in my opinion,

18      Raymond, is not enough.  That -- 15 years, that

19      ain't enough for this and with his record.

20              Do you want to say anything else before

21      I sentence him?

22              MR. JOHNSON:  No, Your Honor.

23              THE COURT:  Mr. Shaddrix, did you have

24      anything else for this Court?

25              MR. SHADDRIX:  No, Your Honor.

13

```
 1          THE COURT:  All right.  Mr. Waters, this
 2     Court is going to sentence you to 30 years in the
 3     Department of Corrections.  Is there any
 4     restitution in this case?
 5          MR. SHADDRIX:  Yes, Your Honor.  $482.40.
 6          THE COURT:  I'm going to order restitution
 7     in the amount of $482.40, court costs, $50 to the
 8     Crime Victim's Compensation Commission.  I'm
 9     going to order that restitution be paid first
10     from any money received while in the Department
11     of Corrections.
12          You have a right to appeal any issues
13     that you reserved for appeal, Mr. Waters.  If you
14     cannot afford an attorney, one will be appointed
15     for you and a copy of the transcript will be
16     provided to you.
17          MR. JOHNSON:  Judge, we would object to the
18     30-year sentence.  I think it is excessive in
19     this case.
20          THE COURT:  No, it is not excessive.  It is
21     not excessive whatsoever based on what he did and
22     his past record.  That is not excessive at all.
23          All right.  Thank you.  I'm sorry,
24     Ms. Noland.
25                    *  *  *  *  *  *  *  *  *
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

14

1           IN THE FIFTEENTH JUDICIAL CIRCUIT
               IN AND FOR MONTGOMERY COUNTY
2                MONTGOMERY, ALABAMA

3

      STATE OF ALABAMA,

4

             PLAINTIFF,

5

      vs.                  CRIMINAL ACTION
6                       CASE NO. CC-05-275

7      CLARENCE WATERS,

8             DEFENDANT.

9

10       ——————————————————/

11       COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS
                 JUNE 16, 2005
12

13         MONTGOMERY COUNTY COURTHOUSE
                COURTROOM 3-B

14

15      BEFORE:  THE HONORABLE TRACY S. McCOOEY
              CIRCUIT JUDGE

16

17             APPEARANCES

18      ON BEHALF OF THE STATE:
      MATTHEW SHADDRIX, ESQUIRE
      DEPUTY DISTRICT ATTORNEY
19      FIFTEENTH JUDICIAL CIRCUIT
      MONTGOMERY, ALABAMA
20
      ON BEHALF OF THE DEFENDANT:
21      RAYMOND JOHNSON, ESQUIRE
      MONTGOMERY, ALABAMA

22

23

24

25

                 Vicki H. Clark
            Official Court Reporter
             (334) 832-1365



STATE'S
EXHIBIT
10

15

```
 1                        PROCEEDINGS
 2            THE COURT:  How are you doing, Mr. Waters?
 3            THE DEFENDANT:  I'm okay.
 4            THE COURT:  Good.  Mr. Waters, I got the
 5      letter from you over in the jail about you
 6      wanting to withdraw your guilty plea.
 7            THE DEFENDANT:  Yes, ma'am.
 8            THE COURT:  Okay.  What -- who was your
 9      lawyer?
10            THE DEFENDANT:  Raymond Johnson.
11            THE COURT:  Mr. Johnson.
12            THE DEFENDANT:  Yes, ma'am.
13            THE COURT:  And why are you claiming that
14      you want to withdraw it?  What are you saying the
15      problem is?
16            THE DEFENDANT:  Okay.  What happened was in
17      the beginning we were just -- it was just open
18      and shut that we were going to go to trial.
19            THE COURT:  Right.
20            THE DEFENDANT:  So he called me on -- we had
21      a status conference.
22            THE COURT:  Right.
23            THE DEFENDANT:  He called me that day at
24      work, and he left a message for me to call him,
25      and I called him.  He said, we can clear this up.
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

16

1          And, you know, he knowed I'd just started

2          working, so I didn't want to be -- if there's

3          some way we can settle this and get it over.  He

4          said, well, I can guarantee you that you won't

5          get any jail time; you'll -- the most you'll

6          probably get out is I can give you is ten split

7          three, a year on a -- reverse the three, he said,

8          and a year on probation, do your year and come

9          back and, you know, kill it.  So I said, well, if

10         you can do that, I said, I'll just go ahead on.

11              And then, see, with me having the

12         problem that I -- you know, I have, I said, well,

13         that will give me -- that will do me good just to

14         have that supervision, you know, where I have to

15         report to someone.

16         THE COURT:  Well, let me stop you for a

17         minute, Mr. Waters.  Remember when I took the

18         plea?  And I sit here and I ask you questions.  I

19         say, did anyone promise you anything to get you

20         to plead guilty; did anyone threaten you.  That's

21         when you're supposed to tell me, well, actually,

22         Judge, my attorney promised me that I would get a

23         reverse split or whatever he said.  You said

24         nothing.

25         THE DEFENDANT:  And the reason why I didn't

Vicki H. Clark
Official Court Reporter
(334) 832-1365

17

```
1        is because I was thinking that -- you know, I
2        was --
3            THE COURT:  Because you were thinking you
4        were going to get some great deal.  Well, then
5        when I popped you -- what did I give you?  Like
6        twenty years or something?
7            THE DEFENDANT:  Thirty.
8            THE COURT:  Thirty.  Exactly.  It was like
9        whoa.  My point is I ask those questions for a
10       reason.  If a lawyer has promised you something
11       or someone has threatened you, I want to know it.
12           THE DEFENDANT:  Right.
13           THE COURT:  Because only I can sentence you.
14       A lawyer has no idea what I'm going to sentence
15       you to unless there has been an agreement between
16       the DA and the attorney, which there was no
17       agreement between your lawyer and the DA's
18       office.
19           THE DEFENDANT:  Okay.  Here's -- okay.  That
20       day when I came in here, he says -- when he took
21       me outside and he talked to me, he said, the DA
22       and I have made an agreement that he's not going
23       to -- he's not going to disagree with anything
24       that the judge and I decide.  And he says --
25           THE COURT:  Your lawyer and I don't decide
```

18

1       anything.

2               THE DEFENDANT:  Okay.  Well --

3               THE COURT:  Zippo.

4               THE DEFENDANT:  -- you know, there's no way

5       that I'm not -- you know, I'm going to be

6       completely honest with you.  I'm not going to

7       tell you anything.  And since then, he's come to

8       me and he's talked to me.  He's told me -- he

9       said, well, when we -- when he brought me the

10      paperwork to sign for the -- to take the plea

11      back, he said, I'll be a witness for you letting

12      them know that I did convince you or coerce you

13      into taking this plea, one that I definitely -- I

14      definitely wouldn't -- I promise you I definitely

15      would not have taken the plea.  The only reason

16      why I took that plea is because I had been in

17      here for, you know, over four months before I got

18      my bond lowered so I could get out.  And then

19      once I got out, I got a real good job.

20              THE COURT:  Right.

21              THE DEFENDANT:  And so I started working,

22      and I didn't necessarily like the idea of

23      accepting -- you know, saying that I had stalked

24      someone when I hadn't.  I didn't -- I didn't

25      really like that.

19

 1          THE COURT:  Right.

 2          THE DEFENDANT:  But because he convinced me

 3    -- and when he -- when he talked to me and told

 4    me -- we got in here, and he asked the D -- when

 5    you asked him had there been anything discussed

 6    and he said --

 7          THE COURT:  Right, has there been any

 8    agreement.

 9          THE DEFENDANT:  Yeah.  And he said that,

10    well, the DA has decided that we're not going to,

11    you know, like go against anything that, you

12    know . . . And that was my understanding, that --

13          THE COURT:  Well, do you know what we're

14    going to do, Mr. Waters?  We're going to --

15    because we need Mr. Johnson here.  And we're

16    going to hear this next Thursday, June 23rd.

17          And, Dee, you need to tell Raymond he

18    needs to be here at eight o'clock.  Mr. Waters,

19    we're going to get your lawyer in here and see

20    what he told you.

21          THE DEFENDANT:  Right.

22          THE COURT:  If there was some agreement,

23    we've got a problem.  If there wasn't, we don't

24    have a problem.  But we're going to get your

25    lawyer in here, and we'll put Mr. Johnson under

Vicki H. Clark
Official Court Reporter
(334) 832-1365

20

```
 1        oath, and we'll see what he says.

 2             THE DEFENDANT:  I tried to get in touch with

 3        him, you know, for the last -- since I got your

 4        letter last -- last week, I think it was.

 5             THE COURT:  Right.  Well, we're going to

 6        have a hearing next Thursday at eight o'clock.

 7             THE DEFENDANT:  Okay.

 8             THE COURT:  Okay?

 9             THE DEFENDANT:  All right.

10             THE COURT:  And we will have the lawyer

11        here.  And if, in fact, something was promised

12        that shouldn't have been, then we'll let you

13        withdraw your plea.

14             THE DEFENDANT:  Okay.

15             THE COURT:  If it wasn't, then we won't.

16        But we will hear it.

17             THE DEFENDANT:  Okay.  All right.  Thank

18        you.

19             THE COURT:  All right.  Thank you, sir.

20

21

22             *   *   *   *   *   *   *   *   *   *

23

24

25
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

21

```
 1              IN THE FIFTEENTH JUDICIAL CIRCUIT
                  IN AND FOR MONTGOMERY COUNTY
 2                     MONTGOMERY, ALABAMA

 3
        STATE OF ALABAMA,
 4
                    PLAINTIFF,
 5
        vs.                        CRIMINAL ACTION
 6                                 CASE NO. CC-05-275

 7      CLARENCE WATERS,

 8                    DEFENDANT.

 9
        _____/
10

11          COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS
                        JULY 14, 2005
12
                   MONTGOMERY COUNTY COURTHOUSE
13                       COURTROOM 3-B

14
        BEFORE:  THE HONORABLE TRACY S. McCOOEY
15               CIRCUIT JUDGE

16
                        APPEARANCES
17
        ON BEHALF OF THE STATE:
18      MATTHEW SHADDRIX, ESQUIRE
        DEPUTY DISTRICT ATTORNEY
19      FIFTEENTH JUDICIAL CIRCUIT
        MONTGOMERY, ALABAMA
20
        ON BEHALF OF THE DEFENDANT:
21      RAYMOND JOHNSON, ESQUIRE
        MONTGOMERY, ALABAMA
22

23

24

25
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365



STATE'S
EXHIBIT
11

```
 1                      PROCEEDINGS

 2          THE COURT:  How are you, Mr. Waters?

 3          THE DEFENDANT:  Okay, Judge.

 4          THE COURT:  Good. Okay.  I've got

 5    Mr. Johnson here this morning.

 6              Mr. Johnson, Mr. Waters, of course, as

 7    you know, on May 12, 2005, this Court sentenced

 8    him to 30 years in the Department of Corrections.

 9    He had two priors.  Mr. Waters has filed a motion

10    to withdraw his plea saying that you told him he

11    would get a split sentence or probation, in other

12    words, that he was promised some sentence.  Did

13    you ever tell him that, Mr. Johnson?

14          MR. JOHNSON:  Judge, before I actually go

15    into that, if he would waive the attorney-client

16    privilege, I'd feel free to talk about that.

17          THE COURT:  Will you waive the

18    attorney-client privilege so Mr. Johnson can

19    talk to us about what he discussed with you,

20    Mr. Waters?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  You will waive that.  Okay.

23    Thank you.  Okay.

24          MR. JOHNSON:  Your Honor, I told him I

25    thought it would be best if he pled guilty in
```

23

1          this case.

2              THE COURT:  Okay.

3              MR. JOHNSON:  I looked at all of the

4      evidence and went over the evidence and went over

5      the evidence with him.

6              THE COURT:  Okay.

7              MR. JOHNSON:  He was charged with stalking

8      where he followed or harassed this lady and made

9      some threats against her.  I read the threats

10     that she said he made over the phone.  Some of

11     those were recorded.

12             THE COURT:  Right.

13             MR. JOHNSON:  She had an answering machine

14     that recorded, I think, three or four of the

15     things.

16             THE COURT:  Right.

17             MR. JOHNSON:  The threats were really bad.

18     The wording in those threats were something that

19     I thought would be very bad for the Court to hear

20     and would be extremely bad for the jury to hear.

21             THE COURT:  Right.

22             MR. JOHNSON:  We had no way to refute that

23     because -- well, he could take the stand and

24     refute those, but it would also bring out the

25     fact that he had a prior rape conviction.  And in

24

1    these threats he had threatened to rape her

2    repeatedly.

3        THE COURT:  Uh-huh.

4        MR. JOHNSON:  There was also a threat or a

5    statement made that he had seen her at the mall

6    and she had her child with her and he would've

7    grabbed her and raped her then except she had a

8    child there.  And there was even worse threats.

9        It was my opinion that if he pled

10   guilty, we could avoid the Court or a jury

11   hearing the actual wording of those threats and

12   we would come out better.  In fact, that did

13   happen.  The presentence report did not contain

14   those threats.  It only contained a very concise

15   statement regarding the case.

16       THE COURT:  Right.

17       MR. JOHNSON:  And it was my opinion if we

18   could avoid the Court hearing the actual wording

19   of those threats, we would come out much better

20   in the case.

21       I did not promise him he'd get

22   probation.  I didn't make any promises and I

23   don't make promises to clients.

24       THE COURT:  Right.

25       MR. JOHNSON:  I told him I thought there was

Vicki H. Clark
Official Court Reporter
(334) 832-1365

25

1    a chance he could get a split sentence in the

2    case or a lighter sentence if we could avoid the

3    Court knowing the actual words and actual threats

4    that he'd made.

5        THE COURT:  Right.

6        MR. JOHNSON:  So I did tell him he would

7    come out better by pleading guilty.

8        THE COURT:  Right.  But you did not tell him

9    that this Court would give him any sentence --

10        MR. JOHNSON:  Not any particular --

11        THE COURT:  -- or you could assure him he

12    would get a split sentence or probation or

13    anything of that nature?

14        MR. JOHNSON:  I told him it was possible he

15    could get a split sentence.

16        THE COURT:  Right.

17        MR. JOHNSON:  Because I did think in this

18    case there was a likelihood that a split sentence

19    would be appropriate.

20        THE COURT:  Okay.

21        MR. JOHNSON:  And I believe, in fact, the

22    probation officer recommended -- maybe

23    recommended a split.  I don't remember now.  But

24    he recommended a minimum sentence --

25        THE COURT:  Right.

26

```
 1          MR. JOHNSON:  -- less than the Court gave
 2     him.
 3          THE COURT:  Okay.  Do you understand that,
 4     Mr. Waters?  Mr. Johnson, his job as your
 5     attorney is to advise you what is in your best
 6     interest.  He has no idea what this Court is
 7     going to sentence you to unless the DA and your
 8     attorney actually have a sentencing agreement and
 9     I said I would accept it.  And I put that on the
10     Record.  If I have not said that, it is my
11     prerogative and my option to sentence you to
12     whatever I want to sentence you to.  And
13     Mr. Johnson as an officer of the Court has just
14     made the representation he did not promise you
15     anything.  He thought it was in your best
16     interest to plead guilty, which is his job as the
17     attorney.  And he's exactly right.  Based on what
18     has been presented, that probably was in your
19     best interest.  But he didn't promise you any
20     sentence.  Do you understand that?
21          THE DEFENDANT:  Can I say something, please?
22          THE COURT:  Yes, when I'm done.
23          THE DEFENDANT:  Oh, okay.
24          THE COURT:  But I want you to understand
25     that nothing was promised to you about any
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

27

```
 1        sentence.  Yes, I understand you're upset that

 2        I've sent you off for 30 years.  I mean, I

 3        wouldn't be real happy either.  But, actually, I

 4        was nice.  I could have given you more than

 5        30 years.  But Mr. Johnson didn't promise you

 6        anything.

 7               All right.  Now, go ahead.  You can tell

 8        us what you want to say.

 9               THE DEFENDANT:  Your Honor, two days before

10        I was to come to the status conference, I got

11        home, and my sister who I was living with told me

12        that Raymond had called me saying that we could

13        avoid -- I would definitely avoid any type of

14        jail time if I would go ahead on and do the plea

15        bargain.

16               THE COURT:  He didn't say that.

17               THE DEFENDANT:  He told her that on the

18        phone.

19               THE COURT:  We'll swear your sister in in a

20        minute.

21               THE DEFENDANT:  Okay.  And --

22               THE COURT:  And I'm interested in what he

23        told you, Mr. Waters.

24               THE DEFENDANT:  Okay.  Okay.  So this -- I

25        was getting to that.  So when I got home, I
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

28

1    called him.  I said, my sister told me you called

2    and was talking about the possibility of getting

3    this thing squashed.  He says, that's what --

4    that's what we'll do.  You come up here.  I can

5    get you a ten split three, a suspended sentence.

6    You'll do a year on probation and kill the --

7    kill the split.

8         I had no idea, I knew nothing about --

9    anything about a plea bargain whatsoever.

10        THE COURT:  Mr. Waters, Mr. Johnson as an

11   officer of this Court has just represented to the

12   Court he didn't tell you that.  Now, you're

13   saying that he did tell you that.  Well, let's

14   look at the situation.  I have a lawyer who is an

15   officer of the Court who's made a representation

16   or I have Mr. Waters who has two felonies who

17   obviously doesn't tell the truth.  So who are you

18   going to believe?  You know, you're the one with

19   the record, sir.  You're the one who can't tell

20   the truth.  So why should I believe one word

21   you're saying?

22        THE DEFENDANT:  I -- I do.  I understand

23   what you're saying, ma'am, but there would be no

24   way in the world that I would've come here and

25   take a plea bargain unless I had -- I -- I

29

```
 1        wouldn't do it.

 2            THE COURT:  Mr. Waters, now, Mr. Johnson as

 3        the attorney, yes, I'm sure he told you, hey, in

 4        my opinion as the lawyer, I think that this

 5        probably does warrant giving you a split

 6        sentence.  But I'm sure he also added, but the

 7        judge is the one who sentences you.

 8            THE DEFENDANT:  Okay.  That's --

 9            THE COURT:  They try to guess what I'm going

10        to do sometimes, but they don't know, Mr. Waters.

11        But they can just tell you in their professional

12        opinion their best advice.

13            THE DEFENDANT:  The motion that we filed,

14        the motion that he filed for the -- for the

15        dismissal of the plea, when I read those -- the

16        conditions of -- to taking back the plea,

17        everything that I just told you was typed in

18        those -- was typed in that motion.

19            THE COURT:  And, Mr. Waters, I've got a

20        question for you, sir.  You pled guilty.  You

21        admitted you made these phone calls, these

22        threatening statements.  There's no grounds to

23        withdraw your plea.  I mean, you're guilty.  I

24        mean, there's absolutely no reason to withdraw

25        your plea.
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

30

```
 1              THE DEFENDANT:  When I had -- when I had

 2       anything to do with -- 25 years ago when I had

 3       anything to do with criminal court --

 4              THE COURT:  No, we're not going back there.

 5       That's not what we're here about.

 6              THE DEFENDANT:  This is my reason for the --

 7              THE COURT:  The only reason I'm here is to

 8       see if Mr. Johnson made representations to you

 9       that you would get a specific sentence.  He did

10       not make those.

11                 Ma'am, do you want to raise your right

12       hand and we'll swear you in?

13                    (At which time Ms. Johnson was duly

14                       sworn by the Court.)

15              THE COURT:  Okay.  What's your name for the

16       Record?

17              THE WITNESS:  Macy C. Johnson (phonetic).

18              THE COURT:  Okay.  Ms. Johnson, how are you

19       related to the defendant?

20              THE WITNESS:  That's my brother.

21              THE COURT:  Okay.  And did you talk to

22       Mr. Johnson?

23              THE WITNESS:  Yes, ma'am.

24              THE COURT:  Okay.  When did you talk to

25       Mr. Johnson on the telephone?
```

31

```
 1              THE WITNESS:  He called me like -- it may
 2       have been about a week or so before time for
 3       court.  He called me and he told me that he
 4       wanted to talk with Clarence.  Well, I told him
 5       Clarence wasn't there at the time; he was
 6       working.  So he said that he was going to talk to
 7       Clarence, he said, because the best thing he seen
 8       for him to do is just plead guilty and him and
 9       the DA was going to work out a deal to do it on a
10       probation because the minute that -- when
11       Clarence took the guilty plea that day, he met me
12       right outside there.  Well, he told me to -- he
13       told -- he was telling me he had Clarence down at
14       the probation office, down here at the probation
15       office, and he told me, said that I thought that
16       -- I was there out there waiting to feed the
17       meter right at eight o'clock, and so he said the
18       Court -- oh, it's over with now.  He said -- he
19       told me to take -- that Clarence was at the
20       probation and he was telling me different things
21       for Clarence to get up and Clarence to go to some
22       meetings and stuff, you know, and get some
23       letters of recommendation.
24              THE COURT:  That's right.  You get those
25       before you get sentenced.
```

                    Vicki H. Clark
                 Official Court Reporter
                    (334) 832-1365

32

```
 1              THE WITNESS:  And he was telling that the

 2         probation, you know, that he was going to do it

 3         on a probation.  So -- but at the time when

 4         Clarence was telling me about -- he said take --

 5         he was going to go on and take the plea, I said,

 6         Clarence, I said, stalking is a serious crime,

 7         and I said -- I said, don't take no plea to

 8         stalking, I said, because it wasn't nothing but

 9         some phone calls.  And so then I said, because at

10         the time when you supposed to been stalking, you

11         didn't even have a car.  How could you stalk

12         without a car?

13              THE COURT:  Ma'am, you do understand your

14         brother admitted to making the phone calls; he

15         admitted to making those very threatening

16         statements --

17              THE WITNESS:  But he told me that --

18              THE COURT:  -- that are extremely serious?

19              THE WITNESS:  Yes, ma'am.

20              THE COURT:  So he is guilty of stalking.

21              THE WITNESS:  He told them that -- but he

22         told them about, you know, that him and the DA

23         was going to work out a deal with you to --

24              THE COURT:  Well, I've got news for you.

25              THE WITNESS:  -- give him probation.
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

33

```
 1              THE COURT:  There ain't no deal worked out
 2       with me, and there wouldn't have been any deal
 3       worked out on this case because I wouldn't take
 4       any deal.  Like I said, Clarence, I had -- I
 5       could've sentenced you all the way up to life in
 6       the Department of Corrections.
 7              THE DEFENDANT:  I understand.
 8              THE COURT:  You understand that.  I mean, 30
 9       years, you are going to come up for parole one
10       day.  But what you did is very serious.  This
11       Court just wanted to make sure, again, that no
12       representations were made by your attorney about
13       any sentence that you would get.  And they were
14       not, Mr. Waters.  Mr. Johnson advised you that he
15       thought it was in your best interest, which is
16       his job as the lawyer.  It's also his job as the
17       lawyer to advise you I think that Judge McCooey
18       might do this or she might not do this.  I mean,
19       that's their job as attorneys.  I mean, they
20       practice in front of this Court, and it's their
21       job to tell you to the best of their professional
22       ability what they think will happen.  But they
23       can't make you any promises about a sentence
24       because they have no idea unless they have
25       reached an agreement with the DA's office and I
```

34

```
 1          have approved it beforehand.  But that was not

 2          the case in your situation.

 3                  THE DEFENDANT:  Can I say just one more

 4          thing?

 5                  THE COURT:  Yes.

 6                  THE DEFENDANT:  Okay.  The only reason why I

 7          went ahead and said that -- I never said that I

 8          made threatening phone calls.  But the reason why

 9          I did say I made phone calls was because -- and

10          when you asked me has anything been promised, I

11          said no because --

12                  THE COURT:  Yes.

13                  THE DEFENDANT:  -- because --

14                  THE COURT:  And I asked that question; did

15          anyone promise you anything; did anyone threaten

16          you in any way.

17                  THE DEFENDANT:  Because -- and the times

18          that I knew anything about prosecutions and

19          lawyers making deals was that if you -- if you

20          say that you --

21                  THE COURT:  Mr. Waters, you know more than I

22          do, man.  You've been in the system so long.

23          Don't sit there and act like you don't know what

24          the deal is.  You've been in the system.  You

25          know how it works.
```

35

```
1              THE DEFENDANT:  I know --

2              THE COURT:  And what it is, sir, to be

3       honest with you, you're just ticked off, man,

4       because I popped you for 30 years.  If I had

5       given you a split sentence or put you on

6       probation, you wouldn't be sitting here going,

7       oh, I didn't do it, Judge; you know, there's

8       more to it.  No, it doesn't work that way, sir.

9       You sat here and you pled guilty.  And the victim

10      was here with her husband, and we went through a

11      whole colloquy, and it's on the Record.  And

12      there's absolutely no reason to allow you to

13      withdraw your guilty plea.  You intelligently and

14      knowingly entered that.  Now you're just upset

15      about your sentence.  Well, too bad.

16             THE DEFENDANT:  Is there any way I can have

17      the --

18             THE COURT:  No.

19             THE DEFENDANT:  -- plea bargain -- I mean,

20      the paperwork for the withdrawing the -- the

21      paperwork that he filed for withdrawing the plea?

22             THE COURT:  Now, you get to appeal if you

23      want.  As I told you, you always have the right

24      to appeal any issues that you've reserved for

25      appeal, and if you can't afford a lawyer, one
```

36

```
 1        will be appointed.  You have the right to appeal

 2        your plea and your sentence, and that's for the

 3        Courts down the street to take up.  But this

 4        Court has absolutely no legal basis to allow you

 5        to withdraw this guilty plea.  All I have in

 6        front of me is a man who is upset because he got

 7        30 years, and that is not a valid, legal reason

 8        to withdraw a guilty plea at all.  And that's why

 9        Mr. Johnson was here, and the Court -- as an

10        officer of the Court, he's made his

11        representation, and this Court believes that and

12        has no reason not to believe it.  And this matter

13        is through.  If you want to appeal, Mr. Waters,

14        send me a written statement that you would like

15        to appeal, and we'll get you a lawyer appointed

16        if you can't afford one.  All right.  Thank you.

17

18

19

20

21

22

23

24

25
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365

37

```
 1                              CERTIFICATE
 2
 3        STATE OF ALABAMA        )
 4        COUNTY OF MONTGOMERY   )
 5
 6        I, VICKI H. CLARK, OFFICIAL COURT REPORTER IN AND
 7        FOR THE FIFTEENTH JUDICIAL CIRCUIT, MONTGOMERY
 8        COUNTY, ALABAMA, DO HEREBY CERTIFY THAT I
 9        REPORTED IN MACHINE SHORTHAND THE FOREGOING
10        HEARING AS STATED IN THE CAPTION HEREOF; THAT MY
11        SHORTHAND NOTES WERE LATER TRANSCRIBED BY ME OR
12        UNDER MY SUPERVISION, AND THAT THE FOREGOING
13        PAGES NUMBERED 2 THROUGH 36, BOTH INCLUSIVE,
14        REPRESENT A FULL, TRUE AND CORRECT TRANSCRIPT OF
15        SAID PROCEEDINGS; THAT I AM NEITHER KIN NOR OF
16        COUNSEL TO ANY PARTIES IN THIS PROCEEDING NOR IN
17        ANY WAY INTERESTED IN THE RESULTS THEREOF.
18
19        DATED THIS THE 5TH DAY OF JANUARY, 2006.
20
21
22
                               VICKI H. CLARK
23                             OFFICIAL COURT REPORTER
24
25
```

Vicki H. Clark
Official Court Reporter
(334) 832-1365